**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 97-30951
(Summary Calendar)

SAMMY NAGEM,

Plaintiff-Appellant,

versus

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
For the Middle District of Louisiana
(96-CV-394)

August 3, 1998

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Sammy Nagem appeals the district court's grant of summary judgment in favor of Defendant-Appellee American National Property and Casualty Co. ("ANPAC"), dismissing Nagem's action to recover uninsured/underinsured motorist ("UM") benefits under a policy issued by ANPAC. Nagem asserts that rejection of

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

those benefits was invalid under Louisiana law, as (1) ANPAC's UM selection/rejection forms were insufficient to satisfy the requirement that the insured be given the opportunity to make a meaningful selection from the options listed on the forms, and (2) his agent recommended that he decline UM coverage, without pointing out that he did not have coverage to compensate him for general damages caused by an UM motorist, thereby depriving him of the opportunity to make a meaningful selection from his coverage options. Finding no reversible error in the district court's grant of summary judgment rejecting Nagem's claim, we affirm.

I

FACTS AND PROCEEDINGS

In November 1993, Nagem purchased an automobile liability insurance policy with American National General Insurance Co. ("ANG"), requesting bodily injury limits of $50,000/$100,000 and rejecting UM coverage. In May 1995, Nagem submitted a new application for a policy, transferring him from ANG (a standard program) to ANPAC (a preferred program) as a result of a change in his driving record. His bodily injury limits were increased to $250,000/$500,000.

The ANPAC application ("the general application") contained a separate section for the selection/rejection of UM coverage. Nagem signed the general application in two places: First, he signed the section specifically relating to UM coverage; second, he signed an

**2**

acknowledgment, located on the same page as the UM provision, stating "I have been advised and have had the various other coverages and limits available to me under this policy fully explained. It is my decision to purchase the coverages and limits set forth herein." In addition, the application contained a separate UM selection/rejection form ("the selection/rejection form"), which Nagem signed. Immediately preceding his signature is the following acknowledgment:

> I acknowledge that the coverages and options shown on this form have been explained to me. It is hereby agreed that my selections apply to all insureds under this liability insurance policy and future renewals, replacements, or reinstatements of such policy. If I decide to select another option at some future time, I must advise my ANPAC agent or the company in writing before the selection becomes effective.

Both forms provide options for seven different levels of coverage from the minimum of $10,000/$20,000 to the maximum of $500,000/$500,000, including the bodily injury limits requested in the application of $250,000/$500,000. An applicant can select one of these coverages by placing an "X" in the box next to the choice. Similarly, the applicant can reject UM coverage by placing an "X" in the box preceding the statement "I do not desire to purchase Uninsured and Underinsured Motorist Bodily Injury Coverage."

Prior to his automobile accident in August 1995, which is the subject of this litigation, Nagem recalls discussing UM coverage with his agent when he obtained the ANG policy in 1993. He states that the agent recommended that he not purchase UM coverage, as his

other coverage was sufficient.  He also says that the agent told him that he did not carry UM coverage on his own policy.  Nagem does not recall discussing UM coverage while going through the 1995 application process.  Finally, Nagem recalls discussing UM coverage with his agent after his accident, at which time, he contends, the agent made the same recommendation as he had in 1993.

Following his accident, Nagem brought suit against ANPAC seeking recovery of UM benefits under his policy.  Both parties filed for summary judgment.  In August 1997, the district court granted ANPAC's motion for summary judgment, dismissing the case. Nagem timely appealed.

## II

## ANALYSIS

On appeal from summary judgment, we review the record de novo "under the same standards which guided the district court."[2] Summary judgment is appropriate when no genuine issue of material fact has been shown and the moving party is entitled to judgment as a matter of law.[3]  In determining whether summary judgment was proper, all facts are viewed in the light most favorable to the nonmovant.

Louisiana law requires insurance companies, such as ANPAC, to offer UM coverage to its insureds.  The availability and amount of

---

[2]Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir. 1988).

[3]FED. R. CIV. P. 56(c).

UM coverage is provided under LA. Rev. Stat. § 22:1406D(1)(a)(i) which states:

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits.
>
> . . . .
>
> (ii) After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.[4]

The Louisiana Supreme Court summarized the requirements of the UM statute in its <u>Tugwell v. State Farm Ins. Co.</u> opinion, stating that the law "provides the insured with three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower than

---

[4]LA. REV. STAT. ANN. § 22:1406D(1)(a)(i)-(ii) (West 1995), <u>amended</u>, Acts 1997, No. 1476 "Omnibus Premium Reduction Act of 1997."

those limits, or no UM coverage.  A rejection on a form that prohibits the insured from choosing limits below liability coverage or which automatically chooses a certain lower amount for the insured, does not meet the statutory requirements . . . ."[5]  The court noted that "a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative."[6]

Moreover, "the insurer must place the insured in a position to make an informed rejection of UM coverage."[7]  "In other words, the form used by the insurance company must give the applicant the opportunity to make a 'meaningful selection' from his options provided by the statute . . . ."[8]  The <u>Tugwell</u> court gave an example of how an insurer can make its insured aware of the fact that he may select lower limits of UM coverage, explaining that "the insurer can require the insured to acknowledge in writing he has been informed of the options; or, the application itself can be set up in such a way through the use of blanks and boxes that it is apparent to the reasonable person that he has the option of

---

[5]<u>Tugwell v. State Farm Ins. Co.</u>, 609 So. 2d 195, 198 (La. 1993).

[6]<u>Id.</u> at 197 (citing <u>Henson v. Safeco Ins. Cos.</u>, 585 So. 2d 534, 538 (La. 1991); <u>Giroir v. Theriot</u>, 513 So.2d 1166, 1168 (La. 1987); <u>A.I.U. Ins. Co. v. Roberts</u>, 404 So. 2d 948, 951-52 (La. 1981)).

[7]<u>Id.</u> (citing <u>Henson</u>, 585 So. 2d at 539).

[8]<u>Id.</u>

selecting any lower limit he chooses."[9]

We conclude that ANPAC's forms were sufficient to give Nagem the opportunity to make a meaningful selection from his coverage options provided by the UM statute. We do not agree with Nagem's suggestion that a form must explicitly provide options stating, "I select UM coverage in the same amount as the limits of my automobile liability insurance," and "I select UM coverage lower than bodily injury limits in this policy." The indicated coverages on the ANPAC form he used encompass both of these choices, as the form included a choice of $250,000/$500,000 —— Nagem's bodily injury coverage limits —— as well as lower coverage limits.[10] The only variance from the statutory options is the format ANPAC used to make them available. The statute does not mandate any particular form or language, and we decline to impose the recitation of talismanic words to satisfy its requirements. With regard to Nagem's contention that his rejection of UM coverage was invalid because of his agent's failure adequately to explain (or alleged misrepresentation of) the extent of UM coverage, we note that Nagem signed both forms, in compliance with the statute, attesting to the fact that the policy's various coverages had been explained to him. Nagem is bound by his contractual acts, and we

_____

[9]Id. at 199.

[10]An applicant could choose coverage in the amounts of $10,000/$20,000; $25,000/$50,000; $50,000/$100,000; $100,000/$300,000; $250,000/$500,000; $300,000/$500,000; and $500,000/$500,000.

will not hear parol evidence to vary those acts.

III

CONCLUSION

For the foregoing reasons, the decision of the district court is, in all respects,

AFFIRMED.

8